STEWART v. HERRING.*

(Division B.    April 6, 1925.)

[103 So. 375.    No. 24827.]

LOGS AND LOGGING.    *Deed held to except out of estate conveyed life estate in grantor in standing timber with right to cut and remove during life tenancy, and reasonable easement therefor.*

A deed conveying land contained this provision: "The timber on the above-described land is hereby reserved during Mrs. Harriett Stewart's lifetime [the grantor in the deed].   At her death it is to revert to the said Charles H. Whittom [the grantee]." *Held:* That there was excepted out of the estate conveyed a life estate in the grantor in the standing timber on the land, with the right to cut and remove the same during the period of the life tenancy, and reasonable easement over the land for that purpose; and at the death of the life tenant the remaining standing timber belonged to the owner of the soil.

*Headnote 1.   Deeds, 18 C. J., Section 356.

APPEAL from circuit court of Marion county.
HON. J. Q. LANGSTON, Judge.

Two actions by Mrs. Harriett Stewart against J. J. Herring, begun before a justice of the peace, and consolidated on appeal to circuit court.   From a judgment for defendant, plaintiff appeals.   Reversed and remanded.

*Rawls & Hathorn,* for appellant.

What did "the timber on the above described land" mean on December 1, 1904, the date of the deed? Plaintiff (appellant) relied on the definition of timber given by this court in the case of *Great Southern Lumber Company* v. *Newsom Bros.,* 129 Miss. 158.   And plaintiff's testimony was calculated to conclusively demonstrate that on and prior to December 1, 1904, the date of the deed, the trees out of which the crossties in controversy

were manufactured, were timber under the definitions of this court, and had a well-recognized and established use in the vicinity of these lands for the purposes enumerated in the definition, to-wit: "The construction of useful articles, buildings, tools, utensils, fences, etc."

Under the decision of the trial court, it is now necessary in determining whether the peremptory instruction for appellee should have been given or refused, to construe the language of the deed: "The timber on the above described land is hereby reserved during Mrs. Harriett Stewart's lifetime; at her death it is to revert to the said Chas. H. Whittom, containing altogether eighty-two acres more or less."

## I.

THE LANGUAGE EMPLOYED CREATES AN EXCEPTION AND NOT A RESERVATION. ˋWe take it that appellee will not contend that the grantor, Mrs. Stewart, did not have a right to separate or divide the estates in this property. "Growing trees are subject to separate ownership from the soil on which they stand, and they are a part and parcel of the real estate." *Harold* v. *Miller,* 35 Miss. 700; *McKenzie* v. *Shows,* 70 Miss. 388; *Fox* v. *Lumber Co.,* 80 Miss. 1; *Butterfield Lumber Co.* v. *Guy,* 92 Miss. 361. And our laws now provide for the separate assessment and valuation of standing timber. *Hicks* v. *Phillips,* 146 Ky. 305, 47 L. R. A. (N. S.) 878; *Goodwin* v. *Hubbard,* 47 Me. 596; *Wait* v. *Baldwin,* 1 Am. St. Rep. 551; *Bardon* v. *O'Brien,* 140 Wis. 191, Am. St. Rep. 1066; 8 R. C. L. 1089, Distinction between reservation and exception.

Under this definition and the cases there cited, it is impossible to escape the conclusion that the language employed by the parties to this deed, withdrew some part of the thing granted, which would otherwise have passed to the grantee, and severed from that which is granted, that which is excepted, so that the latter did not pass. In other words, the title to the timber on the land,

never passed from Mrs. Stewart, but remained at all times in her. *Rich* v. *Zeilsdorff,* 99 Am. Dec. 81; *McAllister* v. *Honea,* 71 Miss. 256, definitely announces the rules by which, in the construction of deeds, an exception is distinguished from a reservation. See, too, *Maxwell Land Grant Co.* v. *Dawson,* 38 L. Ed. (U. S.) 584.

We submit therefore, that when tested by the authorities cited, the language employed in the deed must be construed as an exception and not as a reservation by the overwhelming weight of authorities in those states which make a distinction between the legal effect of an exception and a reservation.

## II.

It is Not Material Whether the Language Used in the Deed is Construed to be an Exception or a Reservation. Most of the later cases, as we propose to demonstrate, have attempted to disregard the fine-spun distinction between the legal meaning of these two words, and to construe them according to the intention of the parties and the purpose underlying the language used. Note page 878 of Ann. Cas. 1918-A; *Bradley* v. *Va. Railroad, etc.,* 118 Va. 133; *Zimmerman* v. *Kirchner,* 151 La. 483; *Plistil* v. *Kaspar,* 168 Ia. 333; *Barrett* v. *Kansas Coal Co.,* 79 Pac. 150. See, also, *Negaunee Iron Co.* v. *Iron Cliffs Co.,* 134 Mich. 264; To the same effect is *Preston* v. *White,* 57 W. Va. 278; and *Moore* v. *Griffin,* 72 Kan. 164; *Moore* v. *Griffin,* 4 L. R. A. (N. S.) 477.

The modern tendency of the court has been to brush aside these fine distinctions, and look to the character and effect of the provision itself. *Gould* v. *Howe,* 131 Ill. 490, 23 N. E. 602.

## III.

The Intention of the Parties to, This Instrument Should and Will Control and That Issue Should Have Been Submitted to the Jury for Its Determination on the Testimony Submitted, Under Proper Instructions

138 Miss.—46.

OF THE COURT. 7 Dec. Dig. 101; 35 Am. Dec. 370; 51 N. E. 186; 86 Ill. App. 193. Under all of the authorities therefore, we respectfully submit that this language in the deed constituted an exception or served to reserve in Mrs. Stewart at all times the title to the timber on this land in 1904, and that, having never parted with this title, she could institute and maintain a replevin suit to recover manufactured products, crossties, made from this identical timber, and in this state of the record, with the intention and acts of the grantor, Mrs. Stewart, clearly shown and proven that it was encumbent upon the court to submit this controversy to the jury for its determination, and the court should have refused to grant the peremptory instruction for the appellee.

## IV.     *

Something was said in the trial court about the peculiar verbiage used in the deed, wherein the timber was reserved or excepted for Mrs. Stewart's lifetime, and at her death to revert to the said Chas. H. Whittom. The remaining clause, that at her death it was to revert to the said Chas. H. Whittom, cannot possibly mean more, under the authorities quoted, than this: "That during her lifetime if she did not see fit to cut and remove this timber or dispose of it, and if there was any timber remaining upon the lands at her death, then the title thereto would pass under the deed to Chas. H. Whittom." *Hand* v. *Filligame,* 92 Miss. 189.

*R. D. Ford* and *Mounger & Mounger,* for appellee.

The crossties in question were made from timber that the appellant as a tenant for life was unauthorized to cut, and she could not maintain a suit of replevin as against the remainderman, the appellee. See 17 R. C. L. 619-20. If no other reference to the timber had been made in the deed, these words in themselves would have been sufficient to unmistakably manifest an intention on

the part of the parties to vest in Mrs. Harriett Stewart a
life estate in this timber with the remainder to the
grantee. But the parties did not stop with this language,
but with a view of leaving no sort of a doubt as to what
their intention was, they proceeded and said that at her
death, that is to say, that at the death of the grantor,
Mrs. Harriett Stewart, it (the timber on this land) is
to revert to the said Chas. H. Whittom.

Now the thing which was reserved during the life-
time of Mrs. Harriett Stewart was the timber which
stood on this land at the time of this conveyance on De-
cember 1, 1904, and this was the very thing which the
deed said should revert to Chas. H. Whittom upon Mrs.
Harriett Stewart's death. Now the parties to that deed,
had they intended to do so, might have reserved the
timber coupled with the right to cut and remove it.

As a life tenant as to this timber which stood on this
land on the first day of December, 1904, the appellant
could have made certain use thereof, and for certain
purposes she could have cut this timber, but for no pur-
pose could she have cut this timber that stood on the
land in 1904 so as to seriously impair the value of the
inheritance. She had made such use of the timber which
stood on this land in 1904 as to disable her from making
any claim whatever to this timber out of which these
ties were made. As the holder of a life estate in the
timber which stood on this land in December, 1904, she
could have cut a part thereof for the purpose of paying
taxes, she could have cut a part thereof for firewood and
for making improvements on the place, and she might
have felled a part of the timber so as to clear up the
land if the clearing had increased the value of the in-
heritance, but she could not in selling the timber for any
of these purposes seriously impair the inheritance. The
rule is well stated in the cases of *Cannon* v. *Barry,* 59
Miss. 305 and *Leonard* v. *Ogden,* 32 So. 278.

The appellant thus finds herself in the unfavored po-
sition of not having ever used any of this timber with-
in the rules of good husbandry or as a life tenant could·

have used it, but all her sales of the timber were for profit, so that she had not only already impaired the inheritance, but when she cut ninety-five per cent in value of this timber she had practically destroyed the inheritance. After having practically destroyed the inheritance, she then takes the position that she is entitled to maintain a suit of replevin as against the remainderman, the appellee, J. J. Herring and recover the manufactured value of these ties, to-wit: the sum of two hundred eighty-seven dollars and eighty cents, and she is not willing for the remainderman to cut down this timber in order that he may clear the land.

The rights and remedies of the tenant for life and the remainderman as to timber severed is discussed in the case of *Jones* v. *Sandlin,* 87 So. (Ala.) 21 C. J. 951. We propose now to take up the several contentions made by the appellant in his brief. The first two contentions may be considered together because it is freely admitted in this brief that the intention of the parties to the deed, as gathered from the whole instrument will control.

Now conceivably if Mrs. Harriett Stewart had desired to create a reservation of this timber, the only language that it would have been necessary to put in the deed was: "The timber on this land is reserved." There are a great many more cases referred to in the brief of counsel for appellant, but in none of them does the court construe any deed containing any language in any wise resembling the language contained in the deed from the appellant, to Chas. H. Whittom. In all of these cases there is either an outright conveyance of timber without any restrictions or limitations, or there is an outright reservation or exception of the timber without any reservations or restrictions, or there is a conveyance of timber with a time limit to cut and remove, or there is a reservation of timber with a time limit to cut and remove.

The last contention made by the appellant is that the intention of the parties to this instrument should and will control, and that this issue should have been submitted to the jury for its determination on the adduced

testimony.  Now this is an incorrect statement of a well-known principle of law, which is correctly stated in the following words: "The intention of the parties as gathered from the whole instrument must govern."  See 17 R. C. L. 619.

In conclusion, we submit that the right result was reached in this case.  The court was perfectly justified in turning back with its peremptory instructions a suitor who though permitted only under the law to cut timber within the rules of good husbandry and not commit waste, had gone on this land and cut ninety-five per cent of it, and now wants the manufactured value, which is ten times the actual value, for the remaining five per cent of the timber that stood on this land.

ANDERSON, J., delivered the opinion of the court.

There were two replevin suits by appellant, Mrs. Harriett Stewart, against appellee, J. J. Herring, begun in the court of a justice of the peace of Marion county for the recovery of timber cut and removed by appellee from his own land, the title to which timber appellant claims was in her.  Both cases reached the circuit court of Marion county on appeal, and were there consolidated and tried, and, at the conclusion of the evidence, the court directed a verdict for appellee upon which judgment was duly entered.  This appeal is prosecuted from that judgment.

The appellant, on the 1st of December, 1904, was the owner of eighty-two acres of land in Marion county, on which there was timber merchantable and unmerchantable.  On that date she conveyed the eighty-two acres of land to her son, Charles H. Whittom (she having been formerly Mrs. Whittom).  The deed to her son contained this provision as to the timber:

"The timber on the above-described land is hereby reserved during Mrs. Harriett Stewart's lifetime; at her death it is to revert to the said Charles H. Whittom."

On the 26th day of January, 1922, Charles H. Whittom and wife conveyed the land to DeWitt Herring, and on June 9, 1923, DeWitt Herring and wife conveyed the land to appellee, J. J. Herring. During the period of the ownership of the land by Charles H. Whittom and his vendee, DeWitt Herring, appellant, without let or hindrance from either of them, cut and removed and sold a considerable quantity of timber from the land. After appellee acquired title to the land, he proceeded to cut and remove the timber involved in this cause, claiming that he had the title thereto and right so to do. The result was the two replevin suits by appellant against appellee, which were consolidated and tried together in the cricuit court and are here on this appeal.

The trial court directed a verdict for appellee on the theory, as we understand from the record in the case and the briefs of counsel, that the language in appellant's deed to her son quoted above, did not constitute an exception in the conveyance by which only a part of the estate in the land was conveyed, but amounted to the creation of another estate, namely, a life estate in the timber in appellant, the grantor, and that under the law the owner of this life estate had no right to remove any timber from the land except (quoting from appellee's brief' "for the purpose of paying taxes, and she could have cut a part thereof for firewood and for making improvements on the place, and she might have felled a part of the timber so as to clear up the land, if the clearing had increased the value of the inheritance." Appellee's position is that a life estate in standing timber on land is governed by substantially the same principles as a life estate in the soil; that a life tenant in the soil has no right to cut and remove the timber thereon except for the purposes of good husbandry; and that the same is true of a life estate in the timber on land.

On the other had, appellant contends that the deed in question simply conveyed the fee in the entire estate with the exception of a life estate in the grantor in the timber thereon, with the right in the life tenant to cut

and remove such timber during the period of the exist-
ence of the life estate.   Unless the contrary appears it
will be presumed that appellant, in the deed to her son,
intended to reserve an estate or a right of some value,
when she undertook to reserve the timber on the land
during her lifetime.   Unless the reservation gave her the
right to cut and remove the timber for commercial pur-
poses, she got practically nothing by her reservation.
In *Hand* v. *Fillingame,* 92 Miss. 185, 45 So. 569, it was
held that a deed of conveyance to land whereby the
grantor reserved all standing timber thereon of certain
dimensions and agreed to remove the same within a
designated period, with right of way retained for that
purpose, the grantee, on the expiration of such period,
became the owner of the timber remaining on the land;
that the meaning of the conveyance was that the grantor
made an absolute conveyance of his land, subject to his
right to remove the timber of certain dimensions there-
from within the period named in the deed, and that what
the grantor did remove within that period was his prop-
erty.

It is true the court said in that case that the deed
there involved was "an absolute conveyance of all his
land, which included the timber on it."   That language
would indicate that the title to the timber went with the
land.   But clearly the court did not intend to convey
that idea, because it held plainly that the title to the
standing timber on the land during the reservation
period, with the right to cut and remove the same, was
in the grantor; and the grantee did not get the title to
the standing timber until the expiration of the reserva-
tion period.   That case is not decisive of the question
here involved, because the conveyance there under con-
sideration expressly reserved the right in the grantor,
during the period named in the deed, to cut and remove
the standing timber growing on the land, with right of
way over the land for that purpose, while the deed in-
volved in the present case is silent as to any right in the
grantor to cut and remove the timber during her life

tenancy, with right of way over the land for that purpose. But we hold that the deed could not have reasonably meant anything else. Without that construction, the reservation would be of practically no value to the grantor. Furthermore, the evidence in the case tends to show that that was the construction put upon the deed for the entire period the land was owned by the appellant's son and his vendee.

The estate consisted of the land and the growing timber thereon. Appellant conveyed to her son the land in fee excepting a life estate in the timber standing thereon, with the right to cut and remove such timber during the period of her lifetime, and the necessary right of way over the land for that purpose. During that period the title to the timber was in her. Without any provision in the deed to that effect, the title to the timber on her death would revert to the owner of the land. That provision in the deed was mere surplusage. It was only a recital of what would have taken place under the law. We do not think the authorities, relied on by appellee, are in point on the facts of this case. They deal with life estates in the soil. The soil lasts for all time. The timber goes and comes.

As to whether the timber cut and removed by appellee was a part of the timber constituting the life estate of appellant excepted from her deed was not fully developed, as we understand the record in the case. We think, therefore, that, instead of a judgment being entered here for appellant, the cause should go back for trial governed by the principles declared in this opinion.

*Reversed and remanded.*